## WALTON v. NICHOLS & SHEPARD CO.

Evidence, in an action for commissions of C. & H., local agents to sell machinery for defendant, **held** to authorize a finding, in the case of a sale to W., for which no commissions are claimed, which sale was closed by B., traveling salesman of defendant, that B. was not the agent of C. & H., or assisting them, in the sale, so as to make them liable, under their contract of employment, as guarantors of the notes taken from W. in payment.

Though agents to sell machinery, who, by provision of their contract of employment, guarantee notes taken in payment for machinery sold by them, make no claim for commissions on a sale

to M., yet defendant having pleaded, as a defense to the action for commissions on other sales, their guaranty of the notes of M., which had not been paid, there was properly deducted from the amount otherwise owing them, not the full amount of such notes, but the part thereof which would have come to defendant after deducting the agents' commission, which was all it would have been entitled to under its contract with them.

Where the judgment, in an action for commissions of selling agents, credits the employer with the amount of notes taken by the agents in payment of articles sold, the notes having been guaranteed by the agents and unpaid, it properly awards possession thereof to the agents; they being entitled to anything that they can collect thereon.

(Opinion filed, Ocober 4, 1910.)

Appeal from Circuit Court, Day County. Hon. J. H. McCoy, Judge.

Action by B. A. Walton, trustee, against the Nichols & Shepard Company. Judgment for plaintiff. Defendant appeals. Affirmed.

*Sears* & *Potter,* for appellant. *Wells* & *Walton,* for respondent.

CORSON, J. This is an appeal by the defendant from a judgment entered upon findings of facts by the circuit court, and from the order denying a new trial. The action was instituted by the plaintiff as trustee in bankruptcy of the firm of Carlson & Hunter, formerly copartners in the implement business in the city of Webster, to recover of the defendant certain sums alleged to be due said firm at the time of their bankruptcy, as commissions on the sales of farm machinery for the defendant. It is alleged in the complaint in effect that the defendant had collected the sum of about $2,000, to which the plaintiff was entitled as commissions due said firm of Carlson & Hunter at the time they became bankrupts. The defendant in effect by its answer denied any indebtedness whatever to the firm of Carlson & Hunter at the time they became bankrupt for the reason that they had, by the terms of their contract with the defendant, become liable to it in a sum in excess of the amount of commissions collected by it and in its possession, as guarantors of the notes taken by them on the sale of farm machinery belonging to the defendant, and that

therefore there was nothing due from it to the said Carlson & Hunter. The pleadings and findings are very voluminous, embracing a large number of exhibits and statements of accounts between the parties, and no useful purpose would be served by attempting to set them out in full, or to give even an abridgment of the same in this opinion. It may be stated generally that it is practically admitted by the pleadings that the defendant had in its possession about $1,500 which was collected as commissions earned by the said firm of Carlson & Hunter; but it claims, as before stated, that, by reason of certain stipulations made by Carlson & Hunter in their contract with the defendant as guarantors of notes taken by them on the sale of farm machinery belonging to the defendant, the defendant was entitled to retain the same as against the claim of the plaintiff until the said guaranteed notes were paid. The findings and conclusions of law as originally drawn were in favor of the defendant, but subsequently the court, upon motion of the plaintiff, modified its original findings and conclusions and found the facts and stated its conclusions of law in favor of the plaintiff, and entered judgment thereon in favor of the plaintiff for the sum of $344.79, and the costs of the action.

It is contended by the appellant that the court erred in modifying its original findings, not on the ground, as we understand the contention of the appellant, that the court was not authorized to correct its original findings, but on the ground that the findings as finally made were not supported by the evidence. There were two items in the account which were mainly in controversy in this action. The defendant claims that Carlson & Hunter should be charged in their account as guarantors of two promissory notes executed by one Wasilk, amounting to about $1,000, which the court disallowed, and that Carlson & Hunter should be charged with the full amount of the notes executed by one Munson to the amount of about $1,075, instead of the sum of about 70 per cent. of the notes, which would be the amount due the defendant as coming to it on account of the guaranty of Carlson & Hunter on the notes of the said Munson. The court, however, in its findings,

deducted from the amount guaranteed on the Munson notes the sum coming to Carlson & Hunter as commissions thereon, which was about the sum found due the plaintiff in the action. The only questions presented for our determination, therefore, are: Was the finding of the court that Carlson & Hunter were not liable as guarantors on the John Wasilk notes sustained by the evidence? Were the findings and conclusions of the court correct in allowing the commissions on the Munson notes by crediting them with the amount that would be due them upon the collection of said notes and deducting therefrom the commission that would be due Carlson & Hunter as commission on the Munson transaction?

It is contended by the respondent that the Wasilk notes were not, under the terms of their contract with the defendant, guaranteed by Carlson & Hunter, for the reason that the sale made to Wasilk of machinery was made by one Barrett, the traveling agent of the defendant, and therefore they were not liable on those notes as guarantors. We are of the opinion that the court was right in its finding upon those notes as clearly under the evidence their payment was not guaranteed by Carlson & Hunter, and therefore they could not properly be chargeable as guarantors upon these notes. Presumptively the finding of the court was right that Carlson & Hunter were not liable as guarantors of the Wasilk notes, and, unless there was a clear preponderance of evidence against such finding, the same must be sustained. It is disclosed by the evidence that Carlson & Hunter took the application of Wasilk for some farm machinery manufactured by the defendant, and forwarded it to the home office, and that the same was rejected by the company for the reason that the application was not accompanied by a statement of the financial condition of Wasilk. Thereupon the company sent its traveling agent, Barrett, to Webster, and he accepted an application of Wasilk for machinery, and made arrangements with him to ship him the same. .

It is contended by the appellant that Barrett, in taking the application, was acting in connection with Carlson & Hunter, and by the stipulations contained in their appointment as agents was, while acting with them, their agent. The clause in the contract  .

between the company and Carlson & Hunter relied upon by the defendant as making Carlson & Hunter guarantors of the notes of Wasilk reads as follows: "It is hereby agreed that, should the company furnish any one to assist the party of the second part in making sales, such person is to be considered at all times and for any purpose the agent of the party of the second part in any sale made by him or them in which the party of the second part may claim an interest or commission, and the party of the second part hereby agrees not to hold the company responsible for any statement or act of such agent while so engaged." The construction placed upon this clause of the contract by the appellant, in our opinion, cannot be sustained, and, under the evidence in this case, Barrett, the traveling agent, could not be considered as the agent of Carlson & Hunter, or as assisting them in making the sale, and that, if he could be so considered, no obligation would be imposed upon Carlson & Hunter to guarantee the notes which were accepted by the agent, Barrett. The plaintiff in this case made no claim for commissions in favor of Carlson & Hunter on the sale made to Wasilk. The notes and securities from Wasilk seem to have been accepted by Barrett, and the only connection that Carlson & Hunter seem to have had with the transaction was that Hunter, under the dictation of Barrett, prepared the application and necessary papers connected therewith. A portion of the deposition of Hunter was introduced in evidence by the plaintiff in rebuttal ,in which he testifies as follows: "I know one J. J. Barrett, now residing in Minneapolis, Minn., and knew him during the year 1904. He was then a traveling salesman for the Nichols & Shepard Company, and collected their notes and accounts. During that year we had dealings with one John Wasilk. We took an order from him for a 20 horse power engine. We did not sell him such an engine. The engine was not shipped on that order. He bought a Nichols & Shepard Company engine that year from J. J. Barrett. We were notified by the Nichols & Shepard Company that the order we took from John Wasilk had been refused by the company. We were so informed by J. J. Barrett. I did not make settlement with Wasilk for that engine. J. J. Barrett made the settlement. I only know how the machine was settled for

from what Barrett told us. I knew Barrett got security on Wa-silk's property at Grenville. 'I know that Eugene Carlson, my partner, never had that order in his possession or under his control. J. J. Barrett had no authority whatever to act for the firm of Carlson & Hunter in selling the engine to John Wasilk, or in taking settlement therefor. The firm of Carlson & Hunter never gave the Nichols & Shepard Company permission to release any security held by them securing the purchase price of the engine sold to John Wasilk." Eugene Carlson testified as follows: "In 1904 I lived at Webster, Day county. Was in the implement and machine business with F. E. Hunter. The firm was organized in January, 1904, and went into bankruptcy. I know the Nichols & Shepard Company. We acted as their local agent in selling their threshing machines, engines, and other machinery manufactured by them. I took an order for an engine for John Wasilk and sent it in to the company; but it was not accepted by the company. The company then sent their representative, J. J. Barrett, to see us, and Barrett and I went out to see John Wasilk, and he came into our office at Webster, and Barrett took an order for an engine from John Wasilk, and it was accepted by the company, and Barrett took a settlement for the same engine. We did not send in the order which Barrett took, and never had it in our hands, nor myself nor the firm of Carlson & Hunter ever had any control over said order. The reason the order was sent in was rejected was because we did not get sufficient security. * * * The order which Barrett took from John Wasilk was filled, and the engine was shipped on that order. I was present at the time John Wasilk settled with the company for that engine. I made the settlement papers out myself, under the direction of J. J. Barrett. At that time J. J. Barrett had no authority to act for Carlson & Hunter in selling said engine to John Wasilk." J. J. Barrett in his testimony makes the following statement: "What I did in that matter was not done by way of assistance of Carlson & Hunter." It would seem quite clear from the testimony, therefore, that the transaction with Wasilk was made by Barrett, and that, under the evidence, Carlson & Hunter could not be legally held as

guarantors of the notes given by Wasilk in that transaction, and that the court was therefore right in so finding.

The further contention of the appellant that the commissions upon the Munson notes due the firm of Carlson & Hunter should not have been excluded by the findings and conclusions of the court, for the reason that the claim of the plaintiff as to that commission was withdrawn on the trial, is untenable, for the reason that the defendant had pleaded as a defense to the action the guaranty made by Carlson & Hunter upon those two notes, and hence the court was required to find what sum the defendant was entitled to retain on account of these notes under the defendant's answer.

The further contention of appellant that the court also erred in holding that the notes should be surrendered up to the plaintiff, as that issue was not raised in the pleadings, is untenable. We are of the opinion that the court committed no error in holding that the defendant was entitled to retain in its hands the amount unpaid on the Munson notes which would be due it under its contract with Carlson & Hunter. The contention of the appellant that the court should have held that the total amount of the Munson notes should have been credited to the defendant, in our view, cannot be sustained. The amount to be credited to the defendant on the Munson notes was the amount to which they would be entitled under their contract, and that, of course, would be the face of the notes, less the commission of Carlson & Hunter. It is quite clear, therefore, that the court was right in adjusting the accounts between the defendant and Carlson & Hunter, by crediting the defendant with only the amount that would actually be coming to that company on account of those notes after deducting Carlson & Hunter's commission. In adjusting the accounts, therefore, the court properly found due the plaintiff the sum for which judgment was entered. But, as will be noticed, in adjusting said account the amount of the Munson notes was charged up against Carlson & Hunter, and credited to the defendant. It was perfectly proper, therefore, for the court, in its judgment, to adjudge that, as Carlson & Hunter had been charged with the amount of those notes belonging to the defendant company, the notes should be surrendered up to the plaintiff. What further interest could the de-

fendant have in the notes? It had been credited with the amount due it on account of the notes, and Carlson & Hunter had been charged with that amount. No possible reason could exist then for the defendant to further retain possession of the notes, and it was therefore perfectly proper in the judgment for the court to award the possession of the notes to the plaintiff, who was entitled to go on and collect the amount due upon the notes from Munson, and, when so collected, of course, that sum will belong to the plaintiff as trustee of the bankrupts.

In our opinion, therefore, the judgment of the court below and order denying a new trial should be affirmed, and it is so ordered.

McCOY, J., taking no part in this decision.